SHUKAT ARROW HAFER WEBER
& HERBSMAN, LLP
Dorothy M. Weber (DW 4734)
494 8th Avenue, Sixth Floor
New York, New York  10001
T:  (212) 245-4580
F:  (212) 956-6471
E:  dorothy@musiclaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

ARTISTS RIGHTS ENFORCEMENT CORP.,          __ CV _____ (____)

              Plaintiff,

                                        **COMPLAINT**

    -against-

THE ESTATE OF BENJAMIN E. KING, P/K/A
BEN E. KING, BY ITS DULY APPOINTED
ADMINISTRATOR TERRIS CANNON, BETTY
KING, TERRIS CANNON, BENJAMIN E. KING
JR., and ANGELA MATOS,

              Defendants.
----------------------------------------------------------------------x

       Plaintiff Artists Rights Enforcement Corp. ("AREC"), by their undersigned

attorneys, Shukat Arrow Hafer Weber & Herbsman, LLP, as and for their

complaint against defendants (collectively, "Defendants"), allege as follows:

## Nature of the Action

1.      This is an action for declaratory judgment seeking a determination
that:  (i) certain agreements entered into between Plaintiff and Ben E. King
continue to be binding on those heirs and upon his estate; and (ii) the termination
notices sent by Ben E. King under Section 304 of the U.S. Copyright Act of 1976 are
effective.

## The Parties

2.      Plaintiff Artists Rights Enforcement Corporation ("AREC") is a
corporation organized and existing under the laws of the State of New York, with its
principal place of business at 1430 Broadway, Suite 505, New York, New York
10018 and is engaged, inter alia, in the business of protecting and licensing rights
for artists and their estates in all genres of music including The Estate of Nina
Simone, The Estate of Frankie Lymon, The Fifth Dimension, The Dixie Cups, The
Shangri-Las, B.J. Thomas, and The Furious Five, among others.   A leader in the
protection of artists' rights, AREC has been heralded in the New York Times as a
champion of artists and writers since 1977.

3.      Among the artists and songwriters who have engaged AREC to assist
with their copyrights is Ben E. King ("King"), the renowned soul and rhythm and
blues singer and producer best known as the singer and co-writer of "Stand By Me,"
which has the distinction of hitting the top 10 in 1961 and 1986.  "Stand By Me" is
on the top 25 list of the RIAA's Songs of the Century.

4.      Defendant Terris Cannon is the duly appointed administrator of The Estate of Benjamin E. King, which is a New Jersey estate.

5.      Upon information and belief, Defendant Betty King is a citizen of and resides in the State of New Jersey.

6.      Upon information and belief, Defendant Terris Cannon is a citizen of and resides in the State of New Jersey.

7.      Upon information and belief, Defendant Benjamin E. King Jr. is a citizen of and resides in the State of New Jersey.

8.      Upon information and belief, Defendant Angela Matos is a citizen of and resides in the State of New Jersey.

## Jurisdiction and Venue

9.      This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1338 (a), in that the controversy arises under an act of Congress relating to copyright, *to wit*, the interpretation and interplay of certain provisions of the Copyright Act of 1976, 17 U.S.C. §§101 *et seq.*, governing renewal and termination of transfers, and therefore arise under that Act. This action, to the extent that it seeks declaratory relief, is also brought under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  Venue is proper in this district under and pursuant to 28 U.S.C. §1391 inasmuch as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## The Facts

### The Copyrights in Issue

11.     King co-wrote the two songs at issue in this action: "There Goes My Baby," and "Stand By Me" (the "King Songs"). The King Songs are the subjects of valid and subsisting copyrights under the laws of the United States as more fully set forth hereinafter.

### The Copyright Conveyances In Issue

12.     Plaintiff AREC entered into two agreements with King (sometimes collectively the "Agreements"). Under the agreement dated July 31, 2014, King, for good and valuable consideration, contracted with AREC to negotiate the sale of the King Songs (the "Agreement").

13.     The Agreement provides in relevant part:

This letter describes the terms on which I am retaining Artist's Rights Enforcement Corporation ("AREC") to provide professional services to me in connection with songs co-written by me; to wit, "There Goes My Baby" and "Stand By Me," and such other of my songs as we may mutually agree to add to the two referenced above. The work we have agreed you will perform for me will include (a) administering, as more specifically set forth below, my share(s) of the United States copyrights in the songs referenced above as may be recovered for me by my attorneys and/or (b) negotiation of the sale of my shares of the United States copyrights in any recovered songs referenced above as I may determine that I wish to sell.

14.     The Agreement provided that AREC was to provide these services on a contingent fee basis.

15.     The Agreement also provided, inter alia, that:

You also agree that you will not be entitled to receive any

compensation for any song I co-wrote for which my attorneys are unable to recover a portion of the United States copyright for me.  You further agree that the writer's share of all income from any recovered song, including public performance income from BMI (and similar organizations), will continue to be paid directly to me. Finally, we both agree that you will not be required to perform audits under the terms of this retainer.  However, if I want to conduct an audit, you will recommend a royalty auditor for me to use, who I may or may not use as I alone will determine.

16.   In the event that the songs were not sold the Agreement further

provided:

In the event I decide to keep my ownership share of any such songs, by this agreement I hereby appoint AREC as my attorney in fact solely for the purpose of collecting and depositing my share of publisher royalties for such recovered song or songs into AREC's escrow account.

17.    On December 15, 2014, King and AREC entered into a second

agreement whereby AREC would undertake an audit of the King Songs (the "Audit

Agreement").  The Audit Agreement provided in relevant part:

You have agreed that you will retain the accounting firm of Prager Metis to perform the audit and shall advance, at your sole risk, all of the costs of the audit. That is, these costs are recoupable only and I am not responsible for any such costs that you fail to recover from the results of the audit.  You will instruct Prager Metis to perform the audit as soon as possible.  You shall also coordinate the disposition of the audit with Sony/ATV when the audit report is complete.

You have agreed to perform these services for me on a purely contingent basis after recovery of all of your recoupable costs ...You are authorized to advise Sony/ATV to pay any audit settlement to AREC, you shall deposit such monies in your escrow account and you shall promptly remit such monies to me after deducting only the recoupable audit costs and the applicable commission.

18.    Pursuant to the Agreement, on or about April, 2015 AREC negotiated

a sale of certain rights in the King Songs to Music Sales Group, one of the premier

music companies in the world.  In addition to administering its own copyrights

Music Sales represents the printed music interests of many other music publishers,

which include Peer Music, Imagem, The Really Useful Group, and Chrysalis, and individual artists such as Bob Dylan, Abba, Eric Clapton, Led Zeppelin, Adele, Leonard Cohen and U2. AREC also successfully solicited additional offers from Sony/ATV sufficient to ensure that the highest price was paid for the rights.

19.     On January 9, 2015, AREC retained the services of Prager Metis, who commenced an audit of Sony/ATV.

**The Termination Notices**

20.     Under Section 304(c) of the Copyright Act, grants or licenses of pre-1978 copyrights executed before January 1, 1978, by the author or his/her heirs may be terminated during a 5-year period beginning 56 years after the earlier of registration or publication.  This 5-year period is commonly referred to as the "termination window."

21.     The termination right remains with the author until his death.  Prior to his death King served the statutory notices and the rights in those terminated copyrights vested in him upon service.  Upon his death, the reverted rights vested in the Estate, not the statutory class of widow and children.

22.     On or about September 3, 2014, King served a termination notice pursuant to Section 304 (c) of the Copyright Law (Title 17, U.S.C.) in connection with the song "Stand By Me."

23.     On or about August 1, 2014, King served a termination notice pursuant to Section 304 (c) of the Copyright Law (Title 17, U.S.C.) in connection with

the song "There Goes My Baby."  On August 22, 2014, an amended notice of termination was served.

24.     The termination notices comply in all regards with the requirements of 37 C.F.R. Section 201.10.

**King's Death and Will**

25.     On or about April 30, 2015, King died.  Six months subsequent to King's death the individually named Defendants hired Lisa Alter, Esq., of Alter Kendrick & Baron, LLP and Judith Tint, Esq. to purport to terminate AREC and notify third parties with whom AREC was negotiating that the Agreement and Audit Agreement were not enforceable.

26.     Such delay was for the purpose of allowing AREC to create a bidding war for the King Songs and then capitalize on AREC's work and the work of AREC's attorney for their own financial benefit and gain.

27.     On or about November 2, 2015 Alter and Tint interfered with AREC's rights, inter alia, by demanding that the audit be discontinued and advising AREC that the Agreements with King were terminated.

28.     Thereafter, Alter also improperly demanded that Prager and Metis cease communication with AREC and its attorney.

29.     Upon information and belief, Defendants, the King Heirs and/or those acting on their behalf, are negotiating with others in direct contravention of AREC's grant of rights in the King Songs.

## COUNT ONE

## Declaratory Relief

30.     Plaintiff repeats and reiterates the allegations contained in paragraphs 1 - 29 as if fully set forth herein.

31.     Plaintiff and Defendants, through their respective counsel, have exchanged correspondence addressing their respective positions, and have failed to resolve the dispute.

32.     As set forth hereinabove, under the Copyright Act, none of the Defendants has the power to terminate the Agreement or the Audit Agreement or revoke the Termination Notices.

33.     The copyrights are now an asset of the Estate, not the King beneficiaries or statutory successor.

34.     Plaintiff has fully performed all of their obligations under the Agreements, which are valid and subsisting Agreements, and AREC stands ready and able to perform all future obligations thereunder.

35.     Defendants have taken the position that the Agreements were rendered null and void by the death of King.

36.     Allowing continued interference with the termination notices served by King serve none of the purposes underlying the termination of transfer provisions of the Copyright Act.

37.     Absent a declaration that the Agreements continue in full force and effect and are not subject to termination, and absent a declaration that the Notices

vested the rights in King prior to his death, Plaintiff will be denied and deprived of the bargained for benefits of the Agreements.

38.  Defendants have also taken the position that King's termination rights pursuant to 17 U.S.C. § 304(c) expired at his death and that they are the sole owners of the statutory termination rights in the King Songs, whereas Plaintiff contends that King's termination rights vested upon service of his notices and passed to his estate at his death.

39.  A judicial declaration is necessary so the parties know whether or not the termination rights in the King Songs belong to King's estate and are subject to AREC's Agreements.

40.   This case presents an actual case or controversy arising under the Copyright Act ripe for a declaration by this Court.

41.   Plaintiff has no adequate remedy at law.

42.   In order to resolve this controversy, Plaintiff requests, pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure, that this Court declare the respective rights and duties of the parties in this matter.

## COUNT TWO

### (Injunction)

43.   Plaintiff repeats and reiterates the allegations contained in paragraphs 1 - 42 as if fully set forth herein.

44.   Plaintiff is being, and will continue to be, irreparably damaged and injured by the aforementioned practices of Defendants, which include interference

with Plaintiff's property rights, and unless Defendants are directed to quit and permit Plaintiff to exercise its rights, Plaintiff will be deprived of the bargained for benefits of the Agreements, which will cause irreparable injury and damage.

45.     Plaintiff will be irreparably harmed without an order restraining and enjoining Defendants from:

   (a)     dishonoring the contractual obligations and commitments under the Agreement and Audit Agreement; and

   (b)     denying Plaintiff's rights and privileges under the Agreement and Audit Agreement.

46.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment as follows:

(i)     Declaring that the Agreements were not terminated by the death of King and continue to be binding on the Estate and the King Heirs;

(ii)    declaring that the Termination Notices are valid and binding and passed to King's estate for sale by AREC;

(iii)   restraining and enjoining Defendants or any of their agents, licensees, representatives or assignees,

> (a) from making any claims to Plaintiff's interest in the King Songs or in any manner encumbering or restricting Plaintiff's rights in the King Songs;
>
> (b) from dishonoring the contractual obligations and commitments under the Agreement and Audit Agreement;
>
> (c) from denying Plaintiff's rights and privileges under the Agreement and Audit Agreement; and

(iv)    awarding Plaintiff the costs and disbursements of this action, together with prevailing party attorneys' fees under the Copyright Act; and

(v)    for such other and further relief as to this Court shall seem just and

proper.

Dated:        February 12, 2016
              New York, New York


                        Respectfully submitted,

                        SHUKAT ARROW HAFER WEBER &
                        HERBSMAN, LLP


                        Dorothy M. Weber (DW 4734)
                        494 8th Avenue, Sixth Floor
                        New York, New York  10001
                        T:  (212) 245-4580
                        F:  (212) 956-6471
                        E:  dorothy@musiclaw.com

                        *Attorneys for Plaintiff*