Ira G. Greenberg
Kara M. Cormier
LOCKE LORD LLP
Attorneys for Plaintiff
200 Vesey Street, suite 2001
New York, NY  10281
(212) 415-8600
Ira.greenberg@lockelord.com
Kara.cormier@lockelord.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

ARTISTS RIGHTS ENFORCEMENT CORP.,

        Plaintiff,        No. 16 Civ. 1121 (JPO)

  Versus

ESTATE OF BENJAMIN E. KING, et al.,

        Defendants.

----------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

      Plaintiff Artists Rights Enforcement Corp. ("AREC") seeks leave to amend its complaint to assert as Count III a claim for breach of an oral agreement to pay fees in exchange for arranging the sale of Benjamin E. King's writer's royalties.

      That count alleges (¶¶ 27-29) that AREC entered into an oral agreement with Mr. King pursuant to which he retained AREC to find a buyer ready, willing, and able to purchase his songwriter's royalties for no less than $6.5 million in exchange for a fee of ten percent of the price the buyer offered.  It also alleges (¶ 30) that AREC found such a buyer, Music Sales Group, which was ready, willing, and able to purchase Mr.

1

King's right to receive royalties in the future for a lump sum payment of $7.8 million. The only reason that the sale did not take place, the proposed complaint (¶ 31) avers, is that defendants took the position that Mr. King's death had nullified the agreement. AREC therefore has been damaged in the amount of $780,000.

As the Court knows, rule 15 provides that leave to amend pleadings should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); see Foman v. Davis, 371 U.S. 178, 182 (1962); Grullon .v City of New Haven, 720 F.3d 133, 139 (2d Cir 2013). "This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" Gordon v. City of New York, 14 Civ. 6115 (JPO) (JCF), 2016 WL 4618969, at *3 (S.D.N.Y. Sept. 2, 2016) (quoting Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011)). Therefore, motions "to amend should [] be denied only for good reasons, including undue delay, bad faith or dilatory motive, undue prejudice to the non-moving party, or futility." Id. (citing Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008), and Foman, 371 U.S. at 182).

Here, the case is in its incipiency, and the Court's scheduling order (Dkt. No. 41), which just entered, permits the parties to bring motions to amend within thirty days following the date of the order (January 23, 2017) or until February 22, 2017. This motion is brought well within that time period and therefore cannot be deemed to have been unduly delayed or to be unduly prejudicial to defendants. See Brookfield Office Props. Inc. v Hotel, 16 Civ. 1854, 2016 WL 6906713, at *2 (S.D.N.Y. Nov. 18, 2016) (undue prejudice arises "when an 'amendment [comes] on the eve of trial and would result in new problems of proof' or when the non-movant would be compelled to expend

significant additional resources"; "that an amendment will require the expenditure of additional time, effort, or money" does not itself "constitute undue prejudice"). Nothing suggests that AREC makes the motion in bad faith or with a dilatory motive. It is interested only in recovering that to which it believes itself contractually entitled.

Thus, the only remaining ground upon which this motion could be denied is futility. "Leave to amend is properly denied on grounds of futility only if 'a proposed amendment is clearly frivolous or legally insufficient on its face.'" In re Boesky Sec. Litig., 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995). As such, a proposed amendment is futile only if "it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Allison v. Clos-ette Too, L.L.C., No. 14 Civ. 1618 (LAK) (JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015). "As when considering a motion to dismiss under Rule 12(b)(6), the court must 'accept as true all of the proposed complaint's factual allegations, and draw all reasonable inferences in favor of plaintiff.'" Id. (citation omitted). Thus, if the amended complaint "sets forth facts and circumstances which may entitle [AREC] to relief, then futility is not a proper basis on which to deny the amendment." Id. As on a motion to dismiss, defendants bear the burden "of establishing that leave to amend would be futile." Id.

### A. Statute of Frauds

The statute of frauds is no bar to maintaining proposed count III.

Gen. Oblig. Law § 5–701(a)(1) is not a problem, because it "'encompass[es] only those contracts which, by their terms, 'have absolutely no possibility in fact and law of full performance within one year.' As long as the agreement may be 'fairly and reasonably interpreted' such that it may be performed

3

within a year, the Statute of Frauds will not act as a bar.'" Rosbach v. Industrial Trading Co., 81 F. Supp. 2d 522, 525 (S.D.N.Y. 2000).  Here, unlike the conveyance of the copyrights, which could not occur within one year, Mr. King's right to receive writer's royalties could – and were going to – be sold immediately for a single lump sum payment, easily subject to performance within a year.

Gen. Oblig. Law § 5–701(a)(10) likewise does not bar this contract.  It applies to "a contract to pay compensation for services rendered . . . in negotiating the purchase [or] sale . . . of a business opportunity, business, . . . inventory, fixtures or an interest therein."  The only arguably applicable portion of that statute is "business opportunity," and the sale of the royalty stream does not fall within that rubric.  Rather, the royalty stream is a single asset, not much different from a security or the right to receive rents that can go up or down in value after purchase but that is not itself a "business opportunity" in the ordinary sense of those words.  See Atlas S.S. Chartering Corp. v. Dillingham Corp., 314 F. Supp. 1118, 1119 (S.D.N.Y. 1970).  To the contrary, the statute was intended to cover the formation of "an enterprise of some complexity or an acquisition of a significant interest in an enterprise."  Freedman v. Chemical Const. Corp., 43 N.Y.2d 260, 266 (1977); see Snyder v. Bronfman, 13 N.Y.3d 504, 510 (2009).  Here, it would require torturing the language to say that Mr. King even had an "enterprise."  As the New York Court of Appeals has admonished, "Too broad an interpretation [of subdivision (a)(10)] would extend the writing requirement to unintended situations.  For instance, the typical stockbroker's dealings might be covered" when they ought not to be.  Freedman v. Chemical Const. Corp., 43 N.Y.2d at 266.

The situation may be different when the recipient of the transferred asset is expected to work to exploit it. Thus, for example, when a book is transferred to a literary agent, the agent is expected to work to promote the book. See, e.g., Stephen Pevner, Inc. v. Ensler, 309 A.D.2d 722, 723 (1st Dep't 2003). This case, in contrast, involves a one-off sale of a private contractual right to receive money; and, since the prospective purchaser of the royalty stream does not currently and may never own the copyright, as is the case here, there is no necessary expectation that it will exploit the song, a role that usually lies with the copyright owner.

B. Copyright Act's Termination Provision

The other basis on which defendants may argue that the proposed amendment is futile is the termination provision of the Copyright Act, 17 U.S.C. § 304(c). But that section only applies to the transfer or license of "the renewal copyright or any right under it." The right to receive the royalty stream here is neither, as it arises out of contract and is not one of the rights for which id. § 106, provides. For example, if Mr. King or his heirs were to have terminated the copyright assignment under the statute and then have sold or otherwise transferred the copyright to a completely different person or entity, the purchaser of the royalty stream would still be entitled to all of the royalties that otherwise would have gone to Mr. King or his heirs from that third-party purchaser. Viewed another way, the royalties are the consideration for the transfer of the entire right to the copyright. Larry Spier, Inc. v. Bourne Co., 953 F.2d 774, 777 (2d Cir. 1992). It is something that flows from the transferee to the songwriter, and not vice versa.

The Patry treatise directly supports this analysis. 2 Patry on Copyright § 5:125 (Sept. 2016) (footnotes omitted) (emphasis in original) says:

> [A]greements to share royalties do not constitute copyright ownership and thus are not exclusive rights under the Copyright Act. Violations of such agreements are matters of state law. The fact that such agreements may be recorded with the Copyright Office does not alter their legal status, since the Copyright Office is obligated to record "[a]ny transfer of copyright ownership or any other document pertaining to a copyright. . . ."
>
> "An agreement to share income royalties, or even assigning all rights to royalties is also not a transfer of copyright." . . . .

See also Larry Spier, Inc., 953 F.2d at 777 (2d Cir. 1992) (songwriter's "right to receive part of the royalties from the copyrights does not negate the fact that he retained no interest in the renewal copyrights themselves;" the practice is to continue paying the writer's distribution of royalties to beneficiaries "notwithstanding termination").

## CONCLUSION

The Court should grant Artists Rights Enforcement Corp.'s motion for leave to amend the complaint.

Dated: New York, NY
February 6, 2017

                              Respectfully submitted,

                              /s Ira G. Greenberg
                              Ira G. Greenberg
                              Kara M. Cormier
                              LOCKE LORD LLP
                              Attorneys for Plaintiff
                              200 Vesey Street, suite 2001
                              New York, NY  10281
                              (212) 415-8600
                              Ira.greenberg@lockelord.com
                              Kara.cormier@lockelord.com