UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ARTISTS RIGHTS ENFORCEMENT CORP.,

                      Plaintiff,

               -v -                            16-CV-1121 (JPO)

THE ESTATE OF BENJAMIN E. KING      OPINION AND ORDER
p/k/a BEN E. KING, by its duly appointed
administrator TERRIS CANNON, *et al.*,

                    Defendants.
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff Artists Rights Enforcement Corp. ("AREC") brought this suit against the Estate of Benjamin E. King ("Ben E. King") by its administrator Terris Cannon (the "Estate"), as well as Betty King, Terris Cannon (in his personal capacity), Benjamin E. King, and Angela Matos (collectively "Defendants), seeking to enforce two contracts between AREC and the deceased, Ben E. King.

      This Court granted in part and denied in part a motion to dismiss, and AREC now moves for reconsideration and modification of that Opinion and Order. (*See* Dkt. No. 28; Dkt. No. 30.) AREC also seeks leave to file an amended complaint. (*See* Dkt. No. 43.) For the reasons that follow, the motion for reconsideration is denied, and the motion to amend is granted.

I.    **Motion for Reconsideration**

      In its earlier ruling, this Court dismissed AREC's claim relating to its Sale Agreement with deceased singer/songwriter Ben E. King. *See Artists Rights Enf't Corp. v. Estate of King*, No. 16 Civ. 1121, 2016 WL 7192093, at *4 (S.D.N.Y. Dec. 12, 2016). AREC now asks the Court to reconsider this holding on the ground that its right of administration, as set forth in the

1

Sale Agreement, did not constitute an interest in the copyrights of the songs at issue in the contract (the "King Songs").[1] (*See* Dkt. No. 31.)

A.  **Legal Standard**

"A motion for reconsideration is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources . . . .'" *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quoting *In re Initial Public Offering Sec. Litig.*, 399 F.Supp.2d 298, 300 (S.D.N.Y. 2005)). To prevail, the movant must demonstrate: "(1) an intervening change in controlling law; (2) the availability of new evidence or (3) a need to correct a clear error or prevent manifest injustice." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580–81 (S.D.N.Y. 2013) (quoting *Drapkin*, 818 F. Supp. 2d at 696). Ordinarily, the third showing—advanced by AREC here—requires the movant to demonstrate that the Court overlooked a key fact in the record or a controlling point of law. *See Cioce v. Cty. of Westchester*, 128 F. App'x 181, 185 (2d Cir. 2005).

B.  **Discussion**

AREC asks the Court to reverse its earlier Opinion and Order in one respect: to hold that the administration right set forth in the Sale Agreement, considered in isolation from other terms in the Agreement, did not convey to AREC any interest in the King Songs' copyrights, or any right under a (soon-to-be) terminated grant, and therefore is not void as a matter of law under the Copyright Act. (Dkt. No. 31 at 4.)

As an initial matter, AREC admits that "[t]he parties did not brief extensively whether the right of administration," a right putatively conveyed to AREC under the Sale Agreement, "was

---

[1] Familiarity with the facts of this case—as described in the Court's Opinion and Order granting in part and denying in part Defendants' motion to dismiss—is presumed. *See Artists Rights Enf't Corp.*, 2016 WL 7192093.

an interest in copyright." (*Id.* at 2.) Rather, it represents that Defendants "implicitly conceded the validity of AREC's position" (*id.*), and subsequently appears to admit the novelty of the argument in this litigation (*see* Dkt. No. 39 at 1). AREC's failure to put this argument "before [the Court] on the underlying motion," is reason enough to deny the motion—AREC has waived the argument and cannot seek to litigate the issue for the first time on a motion to reconsider. *See Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (emphasis omitted) (quoting *Yurman Design Inc. v. Chaindom Enterp., Inc.*, No. 99 Civ. 9307, 2000 WL 217480, at *1 (S.D.N.Y. Feb. 22, 2000)).

AREC further fails to point to controlling law or key facts that the Court overlooked in its previous ruling. To support its legal claim, AREC cites two treatises and several district court opinions (primarily discussing royalties) (Dkt. No. 31 at 2), which do not constitute "controlling decisions" for the purposes of a motion for reconsideration. *See Cobalt Multifamily Investors I, LLC v. Shapiro*, 06 Civ. 6468, 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009) ("Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." (quoting *Langsam v. Vallarta Gardens*, No. 08 Civ. 2222, 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009))). Nor does AREC point to key facts that the Court missed, instead alluding to its intention to file a motion for leave to amend its complaint. (Dkt. No. 39 at 3-4.) AREC's motion therefore fails to make the threshold showing warranting reconsideration. *See Cioce*, 128 F. App'x at 185.

Moreover, AREC's new argument—even if credited—does not address the fact that, here, the promise of any administration rights set out in the Sale Agreement was bound up with the transfer of "ten percent (10%) of [King's] ownership share" in the King Songs (or else ten percent of the proceeds of any sale of ownership). (Dkt. No. 20-3 at 2.) The Copyright Act

3

invalidates not only the transfer of any ownership or other direct interest in a copyright—such as the ten percent promised to AREC in the Sale Agreement—but also the "further grant . . . of *any right* covered by a terminated grant" made prior to the effective date of termination. 17 U.S.C. § 304(c)(6)(D) (emphasis added). AREC does not clarify how the transfer of administration rights in connection with the transfer of a partial ownership interest (as described in the Sale Agreement), or in light of the scope of the original grant to Sony/ATV (Dkt. No. 20-3 at 2-3), falls outside the ambit of "*any right* covered by a terminated grant." 17 U.S.C. §304(c)(6)(D) (emphasis added). (*See* Dkt. No. 39 at 2.) As a result, AREC's argument about the nature of administration rights would not alter the Court's prior conclusion.

## II. Motion for Leave to Amend

The Court now turns to AREC's motion to amend. (Dkt. No. 43; Dkt. No. 45.)

### A. Background

AREC seeks leave to amend to add a new claim: breach of an oral agreement to pay fees in exchange for arranging the sale of Ben E. King's writer's royalties. (Dkt. No. 44-1 ¶¶ 23-33 ("Am. Compl.").) The new count alleges that AREC entered an oral agreement with Ben E. King prior to his death, in which King retained AREC to find a buyer to purchase writer's royalties for not less than $6.5 million, in exchange for a ten percent fee. (*Id.* ¶¶ 27-29.) The proposed amended complaint further alleges that AREC found a buyer in the Music Sales Group ("Music Sales"), which was willing to pay $7.8 million. (*Id.* ¶ 30.) This sale did not occur, however, because Defendants took the position that King's death nullified the oral agreement. (*Id.* ¶ 31.) AREC claims damages in the amount of $780,000 (or ten percent of the sale price) in connection with the canceled contract. (*Id.* ¶ 33.)

4

## B. Legal Standard

Under the Federal Rules of Civil Procedure, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court has broad discretion in determining whether to grant leave to amend . . . ." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## C. Discussion

As a preliminary matter, this case is still in its infancy, and the Court's scheduling order, issued on January 23, 2017, permitted the filing of any motion to amend within thirty days of that order. (Dkt. No. 41 at 1.) This motion for leave to amend was filed on February 6, 2017, well within that period. (Dkt. No. 43.) It therefore is not untimely and there is no evidence of "undue delay, bad faith, or undue prejudice to the non-movant." *Milanese*, 244 F.3d at 110. Defendants concede as much.

Instead, Defendants challenge the motion to amend on the basis of futility. "Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010). "To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016) (citing *AEP Energy Servs.*, 626 F.3d at 726). "As when considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor." *Id.*

First, Defendants argue that the proposed amendment is futile because any sale of royalties related to the King Songs is necessarily invalid under the Copyright Act. To that end, Defendants contend that—though they acknowledge that the proposed amendment does not specify as much (Dkt. No. 52 at 8)—any agreement over the payment of royalties *must* have included royalty rights that attached directly to the copyright itself (*id.* at 10-12 (arguing that Music Sales's offer is "best understood as an offer to acquire King's *entire copyright interest* in the Songs for a single lump sum payment" (emphasis added))).

But any assignment of royalty payments alone does not necessarily, in all circumstances, imply a transfer of copyright ownership or a direct interest in the copyright. *See Big E. Entm't, Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788, 798 (S.D.N.Y. 2006) ("Assignments of interest in royalties have no relationship to the existence, scope, duration or identification of a copyright, nor to rights under a copyright." (internal quotation marks omitted) (quoting *Broadcast Music, Inc. v. Hirsch*, 104 F.3d 1163, 1166 (9th Cir. 1997)), *aff'd*, 259 F. App'x 413 (2d Cir. 2008); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1159-60 (S.D.N.Y. 1996) (contemplating "copyright ownership" as separate from an entitlement to royalty checks).

Because a promise of royalty payments *may* exist separately from a promise to transfer any direct interest in or rights under a copyright, the motion to amend to add the additional count is not obviously futile in this respect. Taking the facts as pleaded as true, and drawing all inferences in AREC's favor, the Court cannot assume that any agreement necessarily included the purchase of "*both* King's writer's interest *and* his reverted copyright interest," rather than just his royalties. (*Id.* at 12 (citing Dkt. No. 53-2).) That is, not every promise of royalty payments necessarily runs afoul of the Copyright Act, so more argument or fact development can clarify the picture.

Defendants next contend that AREC has not sufficiently alleged a "meeting of the minds" as to the oral agreement. Specifically, Defendants challenge AREC's ability to allege that "the parties [were] brought to an agreement on *all* material terms," as required for an agreement to pay a brokerage fee. (Dkt. No. 52 at 13.) This returns Defendants to their theory of the contract's untimely demise: If the principal dies before a meeting of the minds occurs, the authority of a broker (as any other agency relationship) terminates as a matter of law, and no deal could be consummated. (*Id.* at 14.)

While Defendants heavily criticize AREC for its lack of detail as to the specifics and terms of the oral contract, AREC *does* allege that agreement was reached, both between King and AREC for the brokerage and between AREC and Music Sales for the sale of the royalties. (Am. Compl. ¶¶ 24-30.) And, despite Defendants' protestations to the contrary (Dkt. No. 52 at 16-17), AREC, in fact, alleges that AREC "reported to Mr. King" information about the deal with Music Sales (Am. Compl. ¶ 28). The fact that some terms are not described as having been finally agreed upon—and that subsequent conversations may have set the terms for more peripheral considerations—does not prevent AREC from even alleging the existence of an oral contract. *See Michael Coppel Promotions Pty. Ltd. v. Bolton*, 982 F. Supp. 950, 954 (S.D.N.Y. 1997) ("So long as [agreement on material terms] has been achieved, subsequent discussions thereafter over related or tangential matters does not render the contract inchoate or invalid."). The existence and agreement upon various extrinsic terms is properly the subject of briefing or fact development at a later stage. *See Bandler v. BPCM NYC, Ltd.*, No. 12 Civ. 3512, 2014 WL 5038407, at *9 (S.D.N.Y. Sept. 29, 2014) (considering these questions at summary judgment and citing cases that do the same), *aff'd sub nom. Michael Bandler, MB & Co. v. BPCM NYC, Ltd.*, 631 F. App'x 71 (2d Cir. 2016). So too are Defendants' objections as to whether there was a

7

"meeting of the minds" as to all material terms of the sale. These objections are not enough to preclude AREC from making the allegation in an amended complaint.[2]

Finally, Defendants argue that any oral agreement is barred by the statute of frauds, which requires agreements to "pay compensation for services rendered in negotiating . . . the purchase [or] sale . . . of a business opportunity . . . or an interest therein" to be made in writing. N.Y. Gen. Oblig. Law § 5-701(a)(10). Courts have found that § 5-701(a)(10) applies where "the plaintiff (1) identified and analyzed the business opportunity, (2) identified and analyzed potential business partners, and (3) was a 'major contributor' to the eventual formation of the enterprise." *Transition Invs., Inc. v. The Allen O. Dragge, Jr. Family Trust*, No. 11 Civ. 04775, 2012 WL 1848875, at *4 (S.D.N.Y. May 21, 2012) (quoting *Gutkowski v. Steinbrenner III*, 680 F. Supp. 2d 602, 613 (S.D.N.Y. 2010)). For example, this provision has been held to bar oral contracts where an agreement was made for one party to "provide alleged 'know-who' and 'know how' in bringing" a complex deal together. *Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV*, 754 F. Supp. 2d 610, 616 (S.D.N.Y. 2010).

But without more argument or facts as to the nature of the oral agreement, the rights ostensibly transferred, and AREC's subsequent dealings with Music Sales, the Court declines to bar the proposed additional claim from even being alleged.[3] *See Transition Invs.*, 2012 WL 1848875, at *4 ("The reach of § 5–701(a)(10) is to be decided on a case-by-case basis" (quoting

---

[2] Defendants' final argument as to whether there was a "meeting of the minds"—that a letter between Music Sales and AREC alludes to a requirement of a "written contract" and "full financial and copyright due diligence" before the deal would be finalized (Dkt. No. 52 at 17-18; Dkt. No. 53-2)—is outside the materials that the Court will consider at this stage. *See Lin v. Toyo Food, Inc.*, No. 12 Civ. 7392, 2016 WL 4502040, at *5 (S.D.N.Y. Aug. 26, 2016) (explaining that in evaluating the futility of a proposed amendment, courts "cannot consider materials outside of the proposed amended complaint").

[3] The Court declines to rely upon the emails AREC submitted, for the first time, in connection with its reply brief. (Dkt. No. 60.)

*Tower Int'l Inc. v. Caledonian Airways, Ltd.*, 133 F.3d 908, 1998 WL 3614, at *2 (2d Cir. Jan. 8, 1998)); *Freedman v. Chem. Constr. Corp.*, 43 N.Y.2d 260, 266-67 (1977) ("The scope [of § 5-701(a)(10)] is still to be fully resolved."). The nature of the agreement—whether the deal is properly considered the brokerage of a "business opportunity" that would be barred by the statute of frauds (Dkt. No. 52 at 18-19), or the mere transfer of a "royalty stream" (Dkt. No. 58 at 5)—is a question fairly answered at a later stage.

Mindful of the mandate that leave to amend should be "freely give[n]," Fed. R. Civ. P. 15(a)(2), the Court declines to preclude AREC's proposed amendment on futility grounds.

### III. Conclusion

For the foregoing reasons, AREC's motion for reconsideration is DENIED, and AREC's motion for leave to amend is GRANTED.

The proposed complaint filed at Docket Number 44-1 is hereby deemed the operative Second Amended Complaint.

Defendants are directed to answer or otherwise respond to the Second Amended Complaint on or before June 7, 2017.

The Clerk of Court is directed to close the motions at Docket Number 30 and Docket Number 43.

SO ORDERED.

Dated: May 15, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge

9