UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARTISTS RIGHTS ENFORCEMENT
CORP.,

                      Plaintiff,

-v-

THE ESTATE OF BENJAMIN E. KING
p/k/a BEN E. KING, by its duly appointed
administrator TERRIS CANNON, *et al.*,
                      Defendants.

16-CV-1121 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    The question presented by this motion *in limine* is at once antiquated and novel. At issue is New York's antediluvian "dead man's statute." In broad strokes, the statute prohibits a witness from testifying about communications with a dead person if the witness is an interested party in the litigation. In other words, if A has a conversation with B and B dies, A cannot testify about that conversation if A is an interested party in the litigation. Plaintiff Artists Rights Enforcement Corporation ("AREC") claims that its former sole shareholder, Charles Rubin, entered into an oral contract on AREC's behalf with the late, legendary R&B singer Ben E. King. The question is whether Rubin, who has since sold his AREC shares to his wife, can testify about that conversation with Ben E. King. For the reasons that follow, he may.

**I.    Background**

    This suit is about the rights to two Ben E. King songs: "Stand by Me" and "There Goes My Baby." AREC claims that it acquired royalty rights to the two songs from Ben E. King. Defendants are Ben E. King's heirs and his estate.

1

The facts necessary to decide this motion are minimal, and are most effectively conveyed chronologically:

- July 2, 1981: Charles Rubin becomes the sole shareholder of AREC.

- July 31, 2014: Charles Rubin meets with Ben E. King and, according to AREC, negotiates an oral contract between King and AREC pertaining to the two songs.

- April 30, 2015: Ben E. King dies.

- February 2, 2016: AREC files suit.

- June 20, 2017: Charles Rubin transfers all his AREC shares to his wife, Marcia Rubin. Charles Rubin remains the president of AREC.

While this suit was originally about copyrights and written contracts, the sole surviving claim is that there was an oral contract between Rubin—acting on behalf of AREC—and Ben E. King. AREC wants to call Rubin to testify about his conversation with Ben E. King. Defendants, invoking the dead man's statute, object.[1]

## II. Discussion

### A. The Dead Man's Statute

The dead man's statute is a vestige of the common law. Specifically, it is a vestige of the common law notion that interested people are incompetent to testify. *See In re Wood*, 52 N.Y.2d 139, 143 (1981). It is motivated by the fear of "imperil[ing] the estates of the dead by subjecting them to the uncontradicted perjuries of the mendacious." *Croker v. New York Tr. Co.*, 245 N.Y. 17, 21 (1927). This rule has long been discarded by the Federal Rules of Evidence. However, given that this Court sits in diversity, New York's dead man's statute governs. *See Rosenfeld v. Basquiat*, 78 F.3d 84, 88 (2d Cir. 1996).

---

[1] Defendants dedicate much of their opening brief to factual assertions about Rubin and his credibility. While interesting, these assertions are not relevant to the purely legal question presented by this motion. They will surely be fully aired at the trial in this case.

In relevant part, the statute provides that:

> Upon the trial of an action . . . , a party or a person interested in the [trial], or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person . . . concerning a personal transaction or communication between the witness and the deceased person . . . .

N.Y. C.P.L.R. § 4519.

No one will ever accuse the dead man's statute of being reader-friendly. In relevant part, however, it bars potential witnesses if (1) there is a trial; (2) the potential witness is either "a party or a person interested in the [trial]," or the potential witness is "a person from, through or under whom such a party or interested person derives his interest"; (3) the testimony is in the witness's own behalf, or in behalf of the party succeeding to the witness's interest; (4) the testimony is against the executor, administrator or survivor of a dead person; and (5) the testimony concerns a personal transaction or communication between the witness and that dead person.

The only issues here are the second and third elements, which are intertwined. Specifically, the question is whether Rubin (a) is "interested" in the trial and is testifying on his own behalf, or (b) is testifying on behalf of another person whose interest is derived from Rubin. Each is discussed in turn.

### B. Is Rubin "Interested" in the Trial?

This answer is fairly straightforward: Rubin is not himself "interested" in the litigation for the purposes of the dead man's statute.

First, the fact that Rubin's wife Marcia stands to gain if AREC wins—making Marcia "interested" in the suit—does not mean Charles Rubin is interested too. This is a product of the

3

formalistic approach taken by the New York courts. For example, in *Duncan v. Clarke*, the New York Court of Appeals held that, in a suit brought by a minor child, a mother could testify on the child's behalf concerning a conversation with the child's deceased father. 308 N.Y. 282, 285–86 (1955). The Court noted that "[a]though the ultimate effect of [a win by the child] would be to lift from the mother the financial burden of the child's support," the mother's testimony was admissible because "the 'interest' which renders a witness incompetent under [the dead man's statute] is only such as results from the 'direct legal operation of the judgment.'" *Id.* (quoting *Hobart v. Hobart*, 62 N.Y. 80, 83 (1875)). Here, the "direct legal operation" of any judgment would benefit only AREC and its sole shareholder, Marcia Rubin. While the factfinder at trial may certainly consider the Rubins' spousal connection when it comes to credibility determinations, Charles Rubin is not an "interested" party solely by virtue of marriage.

Second, the fact that Rubin transferred his shares on the eve of his deposition, presumably so he could testify, does not make him interested. Here too, the New York courts have taken a formalistic approach that looks solely at whether the witness is "interested" while sitting in the witness box. For example, in *Friedrich v. Martin*, the sole shareholder of the plaintiff corporation sold his shares to his sister-in-law during a trial recess, just so he could testify at trial. 294 N.Y. 588, 594–95 (1945). The Court of Appeals held that the dead man's statute did not apply because "[w]hen it was proved that the witness had transferred all his stock, he was then devoid of any interest in the event of the suit, which is the point of inquiry when a witness is presented." *Id.* (quoting *Gilbert v. Manchester Iron Mfg. Co.*, 1834 WL 2936, *2396 (N.Y. Sup. Ct. 1834) (internal quotation marks omitted)).

Third, the fact that Rubin remains the president of AREC does not make him interested. Only shareholders of a corporation, not its employees or officers, are deemed "interested" for the

4

purpose of the dead man's statute. *See Pro Bono Investments, Inc. v. Gerry*, No. 03 Civ. 4347, 2005 WL 2429777, at *7 (S.D.N.Y. Sept. 30, 2005); *see also Griggs v. Renault Selling Branch*, 167 N.Y.S. 355, 357 (App. Div. 1st Dept. 1917) (noting that "[s]tockholders are disqualified on the ground that they have a direct interest in the controversy" but that "[t]here appears to be no reported case in this state holding that an officer of a business corporation who is not a shareholder therein is disqualified as a witness under [the dead man' statute]").

Finally, Defendants raise the prospect that Rubin's oral contract with Ben E. King was on behalf of Rubin, rather than on behalf of AREC. If that were true, and Rubin were himself a party to the contract, he would certainly be barred from testimony. But Rubin is not a named party—AREC is—and AREC does not claim that Rubin was personally a party to the purported contract. Unless that changes, Rubin is not "interested" for the purposes of the dead man's statute.

### C. Is Rubin a Person From, Through or Under Whom a Party or Interested Person Derives his Interest Or Title?

Having concluded that Rubin himself is not "interested" in the litigation, the question becomes whether he is "a person from, through or under whom . . . a party or interested person derives his interest" and, if so, whether Rubin's testimony would be "in behalf of the party succeeding to his title or interest."

This is a knotty question of statutory interpretation, which requires disassembling the convoluted statutory language into its constituent parts. The full, unedited provision states:

> Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person or the committee of a mentally ill person, or a person deriving his title or interest from,

5

> through or under a deceased person or mentally ill person, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person or mentally ill person, except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the mentally ill person or deceased person is given in evidence, concerning the same transaction or communication.

N.Y. C.P.L.R. § 4519. When stripped down to its relevant portions, the statute reads:

> a person from . . . whom [a party or a person interested in the event] derives his interest by assignment or otherwise . . . shall not be examined as a witness . . . in behalf of the party succeeding to his . . . interest . . . .

When the ellipses and brackets are omitted, it reads:

> a person from whom a party or a person interested in the event derives his interest shall not be examined as a witness in behalf of the party succeeding to his interest.

When further broken down into a list of elements, the dead man's statute could attach if:

(1) There is a party or a person interested in the event (here, Marcia)

(2) The potential witness is the person from whom the interested party derives her interest (here, Charles)

(3) The testimony is "in behalf of" the party succeeding to his interest (here, Charles testifying in behalf of Marcia).

Thus, based on the plain statutory text, it appears that Charles Rubin may indeed be barred from testifying. However, this conclusion is cast into doubt by the decision of the New York Court of Appeals in *Friedrich v. Martin*, 294 N.Y. 588 (1945). As here, the sole shareholder in *Friedrich* wanted to testify in a trial involving his company. As here, the sole shareholder sold his shares to a family member in order to skirt the dead man's statute. And as here, this raised two questions: (1) whether the pro forma nature of the transaction means that the original shareholder is still "interested" in the litigation, and (2) whether the original shareholder

6

is barred from testifying because he is the person from whom the new shareholder drives her interest.

As discussed above, the Court of Appeals answered the first question in the negative, as did this Court. *See id.* at 594–95 ("When it was proved that the witness had transferred all his stock, he was then devoid of any interest in the event of the suit, which is the point of inquiry when a witness is presented." (quoting *Gilbert*, 1834 WL at *2396 (internal quotation marks omitted)).

But the Court of Appeals did not answer the second question, or at least did not answer it clearly. It simply said that "The statute does not ban the testimony of one who has assigned his claim or interest unless, as the statute puts it, he is a 'person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise.' It was right, therefore, to let Friedrich, after he had parted with title to the stock, testify on behalf of his corporation which had taken nothing from him by assignment or otherwise." *Id.* at 595 (citations omitted).

Thus, the Court of Appeals did not squarely answer the question whether the dead man's statute barred Friedrich from testifying on the basis that his testimony was in behalf of his sister-in-law, who derived her interest from him by assignment. This silence can be interpreted in two ways: (a) that the dead man's statute is not implicated in such a scenario, as AREC argues; or (b) that the Court of Appeals simply did not reach that question, as Defendants argue.

This is a close call, but the Court concludes that AREC is correct. This conclusion is based on four considerations. First, the fact remains that the Court of Appeals in *Friedrich*—a case that mirrors this case in all relevant respects—allowed the prior shareholder to testify. Even

7

though the court did not address Defendants' argument directly, there is no reason to doubt that, had the dead man's statute applied, the Court of Appeals would have said so.

Second, the treatise cited by both parties, Weinstein, Korn, and Miller's *New York Practice*, appears to distinguish between two types of assignments, stating:

> A transfer, assignment or sale of an asset will not avoid the disqualification *if the title holder must rely on the witness'[s] title*. The witness is a person "from, through or under" whom an interested party derived his title. This rule applies even though the witness has no interest in protecting the title holder. He is assumed to have moral obligation to support his successor—presumably by lying if necessary.

9 Weinstein, Korn & Miller, *NY Civ. Prac.* ¶ 4519.17 (Lexis Advance 2017) (emphasis added).

Thus, the Court posits that there is a distinction between cases where "the title holder must rely on the witness'[s] title" and cases where the assignment is merely incidental to litigation. In other words, if the case rises or falls according to the validity of the witness's original title, the dead man's statute bars the witness from testifying. For example, in *Duncan v. Clarke*, 308 N.Y. 282 (1955), discussed above, the Court of Appeals held that, in a suit by a child plaintiff against her father's estate, the child's grandmother could not testify about a contract between the grandmother and the deceased father concerning child support payments, because the child's interest in the subject matter of the suit was derived from the grandmother. But where, as here, the assignment has nothing to do with the actual litigation, the dead man's statute may not apply. No one doubts that Charles Rubin was the original owner of AREC stock. The only issue is whether AREC entered into a contract with Ben E. King. Thus, neither the stock transfer nor the validity of the original shareholder's ownership is relevant to the case.

Third, the decision by the Court of Appeals in *Abbott v. Doughan*, 204 N.Y. 223 (1912), lends further support to the above distinction. In that case, the plaintiff had given a ring to James Doughan, after which Doughan died. The plaintiff sued Doughan's estate for the ring, arguing

that she had merely lent it to Doughan. The plaintiff called one Ash as a witness. Ash had sold the ring to the plaintiff, and testified about an oral agreement between the plaintiff and Doughan to loan the ring.

The Court of Appeals held that Ash's testimony was neither prohibited by the text of the dead man's statute nor did it fall within the statute's intended scope. As to the text, the court noted:

> Ash [does not] come within the letter of the statute as the "person from, through or under whom" plaintiff "derives his [her] interest or title by assignment." He sold her the ring. But this action is based on the alleged subsequent wrongful detention of the ring by defendant. Under the pleadings and evidence in this case, all that it was necessary for plaintiff to prove was her possession and apparent ownership of the ring and her arrangement with Doughan; and certainly Ash, although the original vendor of the property, was not the assignor of the interest or claim thus involved herein. We must not overlook the difference between the original sale of the article and its subsequent conversion as against the vendee by a third party. Legally they are distinct and separate transactions, and it is the latter one which is involved in this action.

*Id.* at 226–27.

As to the spirit of the statute, the court held that:

> [Ash was not] the person "from, through or under whom" plaintiff "derives his [her] interest or title by assignment or otherwise" in this action, within the meaning of the [dead man's statute]. In construing the language last quoted, we should keep in mind the fundamental purpose of [the dead man's statute]. This, of course, was to prevent a person who was, or who might be assumed to be, a partisan witness from giving his version of a transaction with another who was deceased and could not speak. In effectuating this purpose, the Code naturally took into account a person or party who was directly and legally interested in the event of the suit. It also included a person under whom, as assignor or otherwise, a party or interested person derived his interest or title, and which assignor would be morally and indirectly, if not legally and directly, interested in maintaining the validity and integrity of the assignment, and therefore, to that extent, would be a biased witness.

9

> It will be seen at once that Ash did not come within the spirit of this provision concerning assignors. He made no assignment or transfer to plaintiff which was involved in this action. He was not in any manner responsible for or legally or morally obligated to maintain the agreement on which plaintiff bases this suit. It would neither affect him pecuniarily nor impeach him morally if the plaintiff failed in her present claim, which lay entirely between her and the defendant, as Doughan's representative.

*Id.* at 225–26.

*Doughan* thus reinforces the distinction discussed above—namely, that there is a difference between cases involving the validity of the witness's title and those in which the assignment was merely incidental. Like Ash's prior ownership of the ring, Charles Rubin's prior ownership of AREC stock is not in dispute, and is not the subject of this litigation. Even though it could be argued that Charles Rubin's indirect stake in the litigation is greater than Ash's interest in the litigation over the ring, Rubin's interest in the assigned property—*i.e.*, the AREC stock—is the same. Charles Rubin's interest in the litigation will certainly factor into the determination of his credibility, but it does not bar his testimony. *Cf.* Michael M. Martin & Daniel J. Capra, *New York Evidence Handbook* § 6.4.1 (3d ed. 2017) ("A witness is disqualified as a predecessor in interest only when the action concerns the title or interest in which the witness is the predecessor.").

The most favorable case for Defendants is *O'Brien v. Weiler*, 140 N.Y. 281 (1893). That case involved a complicated dispute over a will. One witness, Freelove E. O'Brien, who had a stake in the will, wished to testify. To circumvent the dead man's statute, she disclaimed her interest in the money involved in the suit. The Court of Appeals held that Freelove's testimony was still barred by the dead man's statute, reasoning:

> If a general release is adopted, and it results in vesting the title to the property released in another person who is a party to the action or interested in its event, the witness is not by the execution of the release rendered competent to testify. If the party in whose behalf

the witness is examined, takes "by assignment or otherwise" from the witness, the examination cannot be allowed. . . .

The restriction was not limited to an interested witness, called in his own behalf, but extends to all cases where it is sought to examine the witness in behalf of a party or person interested in the event, who derives title to the subject-matter of the action by assignment or otherwise from the witness as against the representatives or assignee of a deceased person. If it is claimed that the witness has divested himself of interest, it does not follow that he is thereby rendered competent. The test is to be sought in the legal effect of the instrument by means of which his interest was extinguished. It matters not by what name it is called; if it operates in law to vest in another party to the action, or in a person interested in its event, the title or interest which the witness formerly had, the prohibition remains if it is proposed to use the testimony of the witness in behalf of his successor in interest.

*Id.* at 284–86.

In this respect, *O'Brien* and *Doughan* appear to be in conflict. One holds that relinquishing the witness's interest negates the dead man's statute; the other holds that it does not. There are two ways of dealing with this conflict: The Court could set aside the 125-year-old *O'Brien* precedent in favor of the comparatively spry 106-year-old *Doughan* or the positively youthful 73-year-old *Friedrich*. Alternatively, the Court could reconcile the conflict using the distinction discussed above: Freelove was disqualified in *O'Brien* because she had transferred her interest in the subject matter of the suit; Ash was not disqualified in *Doughan* and Friedrich was not disqualified in *Friedrich* because the transferred interests were not relevant to the litigation.[2] Either option counsels in favor of letting Rubin testify.

---

[2] It is worth pointing out that *O'Brien* itself noted that the dead man's statute applies when the interested party "derives title *to the subject-matter of the action* by assignment or otherwise from the witness." 140 N.Y. at 285 (emphasis added). In contrast to *O'Brien*, the transferred property here—AREC's stock—is not the subject matter of this action.

11

Finally, another thumb on the scale in favor of AREC is the fact that New York courts have interpreted the dead man's statute in a narrow and formalistic way. In the words of Weinstein, Korn, and Miller, "[t]here appears to be an increasing tendency for higher courts in this state to seize upon almost any rational basis permitting circumvention of the provision." 9 Weinstein, Korn & Miller, *N.Y. Civ. Prac.* ¶ 4519.04. It cannot be denied that this motion presents a difficult and close question. Both parties advance compelling arguments, and the authorities send conflicting messages. But given that Defendants bear the burden on this motion, and given the narrow application of the dead man's statute, the Court comes down on the side of allowing Rubin to testify.

## III. Conclusion

For the foregoing reasons, Defendants' motion *in limine* is DENIED.

The parties are advised that the bench trial currently scheduled for April 2–3, 2018, is adjourned to April 16–17, 2018, beginning at 9:30 a.m., in Courtroom 706 of the Thurgood Marshall United States Court House, 40 Foley Square, New York, New York.

The Clerk of Court is directed to close the motion at Docket Number 81.

SO ORDERED.

Dated: February 5, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge